Andrew B. PHILLIPS,
Plaintiff-Appellee,

v.

CHAS. SCHREINER BANK and
Schreiner Bancshares,
Defendants-Appellants.

No. 89-5563.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1990.

Sharon E. Callaway, Robert Kelly, Groce, Locke & Hebdon, San Antonio, Tex., for defendants-appellants.

Stephen Mark Murray, Murray, McClenahan & Sparr, San Antonio, Tex., Dana G. Kirk, Don M. Kennedy, Kirk & Carrigan, Houston, Tex., for plaintiff-appellee.

Before HIGGINBOTHAM, SMITH, and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendants Chas. Schreiner Bank and Schreiner Bancshares (collectively, "Schreiner Bank") seek interlocutory relief from an order forbidding them from pursuing foreclosure proceedings during the pendency of this action. Concluding that the challenged order is an injunction and that it was issued in violation of Fed.R.

Civ.P. 65 and the Anti–Injunction Act, 28 U.S.C. § 2283, we reverse and remand.

## I.

Over the course of several years, Schreiner Bank financed Phillips's participation in numerous real estate ventures, typically securing payment of the loans by obtaining deeds of trust on the properties. By January 1989, Phillips had become dissatisfied with this once-harmonious business relationship. He filed a "lender liability" suit against Schreiner Bank in federal district court, basing jurisdiction upon the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, and also asserting various state statutory and common law causes of action. Phillips's complaint sought actual and exemplary damages, but not recovery of the real property securing the loans.

The parties soon became embroiled in a discovery battle. After Schreiner Bank succeeded in quashing two depositions, Phillips moved for expedited discovery, citing a need to prepare a defense to state court foreclosure proceedings which he expected Schreiner Bank to initiate. The district court granted Phillips's motion by setting stringent deadlines in its March 7, 1989, scheduling order. That order required the parties to amend their pleadings and to file all dispositive motions by April 17 and to complete discovery by May 8.

On March 13, Schreiner Bank moved for a reconsideration of the March 7 scheduling order and assured the court that it would seek only *judicial* foreclosure on Phillips's properties.[1] The court took no action on the motion to reconsider, and on April 14 Schreiner Bank again moved to extend discovery deadlines. On April 25, the bank filed suit in Texas state court, seeking to foreclose on some of Phillips's encumbered properties, and on April 26 it notified Phillips by letter that it planned to foreclose on his home. The letter did not indicate whether the bank planned to seek judicial or non-judicial foreclosure.

Complaining of "foot-dragging" by Schreiner Bank, on April 26 Phillips filed a motion to compel the production of documents and a motion for sanctions. On May 3, Phillips moved for an expedited trial setting because of the bank's initiation of state court foreclosure proceedings.

On May 5, the district court, purportedly in response to the bank's motion for extension, entered an order that granted Phillips's motion to compel production and Schreiner Bank's motion to extend the discovery cut-off. In that same order, the court prohibited the parties from taking any further action in state or federal court or attempting to foreclose on any of the properties involved in the suit.[2] Neither party had moved formally for such relief, and Schreiner Bank first learned that it had been prohibited from pursuing state foreclosure remedies when it received a copy of

1. Texas law allows a mortgagee either to sell property in a non-judicial foreclosure pursuant to powers expressly granted in a deed of trust, Tex.Prop.Code § 51.002, or to bring a judicial foreclosure action.

2. The order reads, in its entirety, as follows:
BE IT REMEMBERED that on the 4th day of May, 1989, came on to be heard Defendant's Motion to Extend Discovery Deadlines. And the Court after considering the same is of the opinion that it should be *GRANTED*.
Accordingly, it is ORDERED as follows:
1. The discovery cut off date shall be extended until Friday, May 26, 1989.
2. Defendant shall produce for inspection and copying all documents which have been requested by Plaintiff, no later than Monday, May 8, 1989. If any documents are not produced based on a claim of work product or attorney client privilege or for any other reason, Defendant shall provide a list of all such documents which are being withheld to the court and opposing counsel, with sufficient description of date, and subject matter for the Court to rule on the privilege claimed.
3. Due to the need for an immediate resolution of this dispute which has been expressed to the Court by both parties, and to avoid duplicitous [sic] and unnecessary litigation pertaining to the issues to be resolved in this case, the parties are hereby ORDERED to take no further action in any state or federal court or attempt to foreclose upon any of the properties involved in this lawsuit until a trial on the merits has been concluded in this Court.
It is so ORDERED.

the court's order in the mail.[3] Schreiner Bank now brings this interlocutory appeal, asking us to dissolve the order as violative of Fed.R.Civ.P. 65 and the Anti–Injunction Act.

## II.

■ Before reaching the merits of this appeal, we must first address Phillips's contention that we are without jurisdiction to hear it. Phillips maintains that the challenged order is not an injunction but merely an effort by the district court to enforce Schreiner Bank's compliance with scheduling and discovery deadlines.[4] As such, Phillips argues, the order was not an appealable injunction within the meaning of 28 U.S.C. § 1292(a)(1). That provision authorizes appeals from interlocutory orders that grant or deny injunctions but "does not authorize appeals from orders that compel or restrain conduct pursuant to the court's authority to control proceedings before it, even if the order is cast in injunctive terms." *Hunt v. Bankers Trust Co.,* 799 F.2d 1060, 1066 (5th Cir.1986).

We find Phillips's argument to be without merit in light of *Hamilton v. Robertson,* 854 F.2d 740 (5th Cir.1988) (per curiam). There, we noted that this circuit has "long recognized a clean distinction between injunctions prohibiting proceedings in other courts, which are appealable, and orders, whether or not styled 'injunctions,' that control proceedings only in the court that issues the order." 854 F.2d at 741. Thus, "[i]f a district court acts to halt proceedings in *another* court, its action is indeed an injunction within the meaning of section 1292(a)(1)...." *Id.* (quoting *Castanho v. Jackson Marine, Inc.,* 650 F.2d 546, 548–49 (5th Cir. Unit A Jun. 1981) (court's emphasis)).

The challenged order prevents Schreiner Bank from taking any "further action in any state or federal court." It therefore is an injunction, and section 1292(a)(1) authorizes this interlocutory appeal.

## III.

■ Having determined that the challenged order is an injunction, we have little difficulty in concluding that it was entered in violation of Fed.R.Civ.P. 65. Rule 65(a)(1) states that "[n]o preliminary injunction shall issue without notice to the adverse party."[5] The courts consistently have treated rule 65(a)(1) as mandatory and have not hesitated to dissolve preliminary injunctions issued without notice or the opportunity for a hearing on disputed questions of fact and law. *See, e.g., Reed v.*

**3.** Counsel for Schreiner Bank became suspicious of the order when they noticed that it contained word-processing coding information that included the initials of one of Phillips's attorneys, thus suggesting that that attorney, and not the court, had prepared the order. Quizzed on this matter at oral argument, Phillips's appellate counsel stated that Phillips's trial counsel (not the same person) had received a telephone call from the district judge, *ex parte,* asking him to prepare and submit the subject form of order; the attorney complied with the court's request. However, neither Phillips's attorney nor the court provided Schreiner Bank's counsel with a copy of the proposed order; hence, the bank was unaware of the same until it received the signed order in the mail.

This is an unacceptable procedure and contravenes the spirit of the federal rules. While we are confident that the district judge had the best of intentions in requesting the subject order, and was only trying to expedite resolution of the dispute, the court deprived the bank of the opportunity to comment upon the proposed relief. In fact, that is the primary reason why we today reverse: The rules afford the bank the right to

know that an injunction is being requested and to have a hearing on that request. The *ex parte* communication also was extraordinary, and in any event Phillips's attorney should have provided opposing counsel with a copy of whatever it submitted to the court. If these procedures had been followed, the instant appeal might very well have been unnecessary.

**4.** Phillips characterizes the April 26 state court foreclosure filing as an attempted "end run" around the April 17 deadline for amending pleadings and the fast-approaching May 8 discovery cut-off.

**5.** Although Rule 65(b) allows the *ex parte* issuance of temporary restraining orders under certain limited circumstances, it also provides that a temporary restraining order "shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes...." Because the challenged order is of indefinite duration, it is a preliminary injunction rather than a temporary restraining order. *See, e.g., Telex Corp. v. International Business Machs. Corp.,* 464 F.2d 1025, 1025 (8th Cir.1972).

*Cleveland Bd. of Ed.,* 581 F.2d 570, 573 (6th Cir.1978); *Consolidation Coal Co. v. Disabled Miners of S. W. Va.,* 442 F.2d 1261, 1269–70 (4th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971); *Sims v. Greene,* 161 F.2d 87, 88–89 (3d Cir.1947).

Moreover, the Supreme Court has indicated that this notice requirement is more than a mere procedural formality; instead, rule 65(b)'s stringent restrictions "on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974). *See also Reed,* 581 F.2d at 573.

Here, the record establishes that Schreiner Bank was not notified or given the opportunity to respond before the order was entered; indeed, it was unaware that Phillips had sought a preliminary injunction until it received a copy of the court's order, by then a *fait accompli,* in the mail. Hence, the injunction was issued in violation of rule 65(a)(1) and must be dissolved.

We also find reversible error in the district court's failure to follow rule 65(c), which directs that "[n]o ... preliminary injunction shall issue except upon the giving of security by the applicant ... for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." As we recently noted in *Continuum Co. v. Incepts, Inc.,* 873 F.2d 801, 803 (5th Cir. 1989), the bond requirement serves to protect the interests of both parties. It "assures the enjoined party that it may readily collect damages ... in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency" of the applicant,[6] and "it provides the plaintiff with notice of the maximum extent of its potential liability...." Because of the importance of the bond requirement, "failure to require the posting of a bond or other security constitutes grounds for reversal" of an injunction. *Id.* (citing 11 C. Wright & A. Miller, Federal Practice and Procedure § 2954 at 524 (2d ed. 1982)).

While we leave it to the district court on remand to determine the proper amount of bond (if the court should elect to enter an injunction), we hold that Phillips is not entitled to a preliminary injunction unless he posts security indemnifying Schreiner Bank against the financial losses it might suffer as a result of a wrongful injunction.

## IV.

■ Our decision is without prejudice to a renewal of Phillips's motion for injunctive relief from *prospective* state foreclosure proceedings and to the proper granting of such relief in a proceeding in which the requirements of rule 65 are met. We conclude, however, that the Anti–Injunction Act, 28 U.S.C. § 2283, precludes any stay of the April 25 state court foreclosure proceedings, which were already pending when the district court issued its May 5 injunctive order.

■ The Anti–Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." It has been interpreted consistently as an absolute bar to any federal court action[7] that has the

---

**6.** This protection is especially important in light of the Supreme Court's holding in *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.,* 461 U.S. 757, 770 n. 14, 103 S.Ct. 2177, 2185 n. 14, 76 L.Ed.2d 298 (1983), that "[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."

**7.** Even orders that technically are not injunctions may violate the Anti–Injunction Act if they have the effect of staying a pending state proceeding. For example, in *Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491 (5th Cir.1988) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 1932, 104 L.Ed.2d 404 (1989), we held that a declaratory judgment to the effect that certain state law claims were preempted by the Longshore and

effect of staying a pending state court proceeding [8] unless that action falls within one of the Act's three specifically designated exceptions. *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977); *Mitchum v. Foster*, 407 U.S. 225, 228–29, 92 S.Ct. 2151, 2155, 32 L.Ed.2d 705 (1972).

We reject Phillips's rather inventive argument that the district court's order falls within the "necessary in aid of its jurisdiction" exception to the Anti–Injunction Act's general prohibition on stays of pending state court actions. While conceding that that exception comes into play only when a state court proceeding "threatens to dispose of property that forms the basis for federal *in rem* jurisdiction," *Texas v. United States*, 837 F.2d 184, 186–87 n. 4 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988) (citing *Signal Properties, Inc. v. Farha*, 482 F.2d 1136, 1140 (5th Cir.1973)), Phillips maintains that Schreiner Bank placed his encumbered properties within the jurisdiction of the district court when it represented that it would seek only judicial foreclosure on those properties. Without expressing any opinion regarding whether Schreiner Bank reneged on its promise to the court, we can easily dispense with Phillips's attempt to characterize this lawsuit as an *in rem* proceeding.

 An *in rem* action is brought against "property alone, treated as responsible for the claims asserted by ... the plaintiffs. The property itself ... is the defendant ... and its forfeiture or sale is sought for the wrong...." *Freeman v. Alderson*, 119 U.S. 185, 187, 7 S.Ct. 165, 166, 30 L.Ed. 372 (1886). An *in personam* action, by contrast, determines a defendant's personal rights and liabilities. Phillips's complaint seeks monetary damages for wrongs allegedly committed by Schreiner Bank. This lawsuit is thus an ordinary *in personam*

action, and the mere fact that debts secured by real property are at issue in the dispute does not transform it into an *in rem* proceeding. *See e.g., Universal Business Computing Co. v. Comprehensive Accounting Corp.*, 539 F.Supp. 1142, 1144 (N.D.Ill.1982) (lawsuit not an *in rem* proceeding merely because both parties claim a proprietary interest in a computer software design).

Here, the district court's *in personam* jurisdiction is not threatened by the possibility that the state court might allow Schreiner Bank to foreclose on the properties at issue in the April 25 action. Indeed, the only risk presented by the state proceeding is that it might result in a judgment inconsistent with the judgment of the district court. The law is well settled, however, that "in no event may the 'aid of jurisdiction' exception be invoked merely because of the prospect that a concurrent state proceeding might result in a judgment inconsistent with the judgment of the district court." *Texas v. United States*, 837 F.2d at 186–87 n. 4 (citing *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295–96, 90 S.Ct. 1739, 1747–48, 26 L.Ed.2d 234 (1970)). Hence, the district court cannot enjoin Schreiner Bank's prosecution of the April 25 state foreclosure action. The district court is directed to vacate that portion of its order proscribing foreclosures and actions in other courts.

REVERSED and REMANDED. The mandate shall issue forthwith.

---

Harbor Workers' Compensation Act violated the Anti–Injunction Act because it effectively halted a pending state court proceeding.

**8.** The Anti–Injunction Act does not prevent federal courts from enjoining the initiation of *prospective* state court actions. *See Jackson*, 862

F.2d at 507–08; *Response of Carolina v. Leasco Response, Inc.*, 498 F.2d 314, 317 n. 4 (5th Cir.), *cert. denied*, 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1965)).